DAVID METCALF *vs.* WILLIAM F. WELD & others.
GRAFTON POCKNET *vs.* SAME.
THOMAS SMITH *vs.* SAME.

A custom of a particular port, that seamen's advance wages, due under shipping articles, shall be paid to the shipping agent, to be paid by him to the boarding-house keeper bringing the seamen, for their benefit, is unreasonable, and does not bind the seamen, although known to them at the time of signing the articles; and, if valid, would not be sustained by evidence that the shipping agent paid the wages to the boarding-house keeper, and charged them in account with the owner of the vessel.

ACTIONS OF CONTRACT by seamen, to recover "advance wages" under shipping articles in common form, by which "it is agreed between the master and seamen or mariners of the Brig Laurillia," &c., "now bound for the port of Boston," &c., "that, in consideration of the monthly or other wages against each respective seaman or mariner's name hereunder set, they severally shall and will perform the abovementioned voyage; and the said master doth hereby agree with or hire the said seamen or mariners for the said voyage, at such monthly wages or prices to be paid pursuant to this agreement, and the laws of the congress of the United States." Answer, payment. The parties waived a trial by jury, under *St.* 1857, *c.* 267; and the cases were heard together in the superior court of Suffolk, at September term 1858, by *Morton*, J., who signed the following bill of exceptions:

" The defendants offered evidence tending to show that it is the custom in the port of Boston, where the plaintiffs were shipped, for owners of vessels to obtain their seamen through a shipping agent, and to pay the advance wages agreed in the shipping articles to the shipping agent; and that such shipping agent pays the same to the boarding-house keeper, who brings the seamen to him; and the boarding-house keeper pays or accounts for the same to the seamen.

" It was shown that the money, at the time of the shipment, was not paid by the defendants to the shipping agent, but was

charged to the defendants by him on his books, and the amount, together with his own charges, was paid to the agent on a subsequent settlement of the defendants' account with him.

" It was also shown that the plaintiffs in these cases knew of this custom, and that the defendants, according to said custom, paid, in manner above set forth, to the shipping agent who shipped the plaintiffs, the sum of $20 each, being the advance wages agreed upon in the shipping articles signed by the plaintiffs.

" The plaintiffs objected to the above evidence as incompetent; and contended that the written contract excluded a parol evidence of such a custom as above set forth, and that the same, if proved, would be an illegal and unreasonable custom, and contrary to the policy of the law. But the court overruled the objections and admitted the evidence.

" The court, being satisfied that the custom existed, and that it was known to both parties, and that the contract was made with reference to and under it, and that the defendants had paid the advance wages under it to the shipping agent, ruled that the custom was a reasonable and proper one; and gave judgment for the defendants in each case."

*C. G. Thomas,* for the plaintiffs.

*J. A. Andrew,* for the defendants. The finding of the court below establishes the existence of the custom relied upon, that the plaintiffs knew of it, that they acted in accordance with that knowledge, and that the defendants paid the money according to the custom. Nothing in the shipping articles excluded the method of proof of payment which was adopted; for, taking the articles as they stand, the question was, Were the plaintiffs paid before sailing? Nor is it unreasonable or illegal that owners and seamen should agree to deposit advance wages of seamen in the hands of a third party, in order to secure to the seamen the benefit of an " advance," and to the owners of the vessel the presence of the seamen when needed.

HOAR, J. Three questions arise upon this bill of exceptions:

1st. Was the payment made by the defendants of the advance

wages due to the plaintiffs in these actions the proper subject of a " custom " of the port of Boston ?

2d. Was the custom proved at the trial a reasonable custom ?

3d. Was the payment proved to have been made according to the custom ?

A negative answer to either of these questions would require the judgment of the court below to be set aside, and a new trial granted; and we are of opinion that neither can be answered affirmatively.

1. The seamen made a written contract directly with the owners. By the terms of that contract they were entitled to receive a stipulated sum as advance wages. The custom relied on in the defence is a custom for the owners to pay this advance to their shipping agent, who is employed by them to procure a crew, and for him in his turn to pay it to the boarding-house keeper who brings the seamen to him. It is not a question of the meaning of terms in a contract, which have a meaning peculiar to the port of Boston, and known to the contracting parties. The contract is intelligible and complete in itself. It obliges the defendants to pay, and entitles the plaintiffs to receive, a certain sum of money at a certain time. Under such a contract, we do not think the mode of payment is the proper subject of a custom, and no authority has been cited in support of such a proposition. It would amount to a custom of seamen to employ a certain class of agents ; a custom for the owners to transfer the direct personal responsibility resting upon them to another, and perhaps an irresponsible party. There are many usages of trade, which have nothing to do with the contracts of parties, and which cannot be set up to modify or control them. It is very customary for merchants to pay their debts by checks upon a bank, and this may be very well known to persons who deal with them, and yet no one is bound to receive a check in discharge of a promise to pay money. It may be a custom in some kinds of business to pay workmen in orders for goods ; or in goods kept for sale by their employer ; or not to pay wages punctually at the time they are due ; and the fears or necessities of the laborer may induce him to yield to the custom, and

accept payment in a manner or at a time convenient to the employer; but it would hardly be contended that such a custom could be regarded in determining the legal effect of a written agreement. We fear it would not be difficult to prove a custom in many ports to defraud and impose upon seamen in various ways; a custom to subject their persons and property to a kind and degree of control which has its origin only in their ignorance and vices; but these are not the customs which give an interpretation to their contracts.

2. But if there could be a custom respecting the manner of payment of the plaintiffs' wages, we do not consider the custom proved in these cases a reasonable or proper custom. It is a custom for one of the contracting parties to put himself under the tutelage or guardianship of a particular class of men, and interferes with his right to the direct control and enjoyment of the fruits of his own labor. It seems to require that the sailor should be in the charge of some boarding-house keeper, and either be in debt to him, or bound to deal with him for the future. Unfortunately this is too often the actual fact. The power which the keepers of boarding-houses for seamen practically exercise over their customers is liable to great abuse, and we cannot think it wise or salutary that it should receive any extension or encouragement. A custom is not reasonable, which allows a payment by the owners to their own agent, with a payment by him to some boarding-house keeper whom the sailor is under no legal obligation, and may not choose, to constitute and trust as his agent. A principle nearly analogous was applied in the case of *Bowen* v. *Stoddard*, 10 Met. 381.

3. But whatever the nature of the custom, the evidence in the cases before us did not show that it had been complied with. The money was not even paid by the owners to the shipping agent at the time it was due, but was charged by him in account. It does not appear that the plaintiffs had any relations to a boarding-house keeper, or that the advance wages have ever been paid to any one for their use. If any boarding-house keeper, authorized by them to receive the money, had actually received it, so that it had gone in any manner to their use, the

defence might have been placed upon the ground of agency. But it certainly cannot be maintained that the defendants can discharge themselves by a mere transfer of their obligation to their own agent.  *Exceptions sustained.*